IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-01057-REB-SKC

CONNOR CARBALLIDO,

        Plaintiff,

v.

TARGET CORPORATION,

        Defendant.

## ORDER RE: MOTIONS TO STRIKE [#43, #46, #52]

On December 20, 2017, Plaintiff Connor Carballido was shopping at a Target store when he tripped on a pallet and allegedly sustained serious injuries. In filing this lawsuit, Plaintiff seeks monetary damages for past and future economic losses, including lost earning capacity and lost wages. The Court entered a Scheduling Order, which controls, among other things, deadlines for the disclosure of affirmative and rebuttal expert reports. [#16.][1] Upon requests from the parties, the Court extended the deadline for affirmative expert disclosures to October 14, 2019, and rebuttal disclosures to December 9, 2019. [#20, #36.]

Following their disclosures, each party filed competing motions to strike the opposing parties' respective experts. [#43, #46, #52.] Senior District Judge Blackburn

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

1

referred each motion to this Court for a ruling. [#44, #47, #53.] Having considered the Motions, the related briefing, and the relevant law, the Court concludes a hearing is unnecessary. For the following reasons, Target's Motion to Strike Plaintiff's Sur-Rebuttal is GRANTED; Plaintiff's Motion to Strike Target's experts is GRANTED IN PART and DENIED IN PART; and Target's Motion to Strike Dr. Chopra's and Messrs. Gibbs and Kaiser's Testimony is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.

## A. TARGET'S MOTION TO STRIKE SUR-REBUTTAL EXPERT [#43]

On October 14, 2019, Plaintiff served his affirmative expert disclosures, which included Reg Gibbs as an expert life planner. Mr. Gibbs' report outlined his opinions on Plaintiff's long term life care plan and his current and future employment prospects. [#43 at p.2.][2] Plaintiff also disclosed Matthew Kaiser, who prepared a damages analysis based on information and data provided by Mr. Gibbs. [*Id.*] On December 9, 2019, Target served its rebuttal expert disclosures, which included a report from Aubrey Corwin, a certified life care planner and vocational expert, rebutting the findings of Messrs. Gibbs and Kaiser. [*Id.*]

Thereafter, on February 18, 2020, Plaintiff served a "sur-rebuttal" opinion prepared by Mr. Gibbs. When Target objected to the disclosure, Plaintiff—in apparent recognition that neither the Scheduling Order nor the Federal Rules contemplate sur-rebuttals—withdrew the disclosure and, on February 20, 2020, served a

---

[2] The Court takes these dates from Defendant's Motion. Plaintiff does not contest the timing of these expert disclosures or the general descriptions of their contents.

supplemental expert disclosure. This "supplemental disclosure" was the same report Plaintiff offered as sur-rebuttal. [*Compare* #43-2 *with* #43-5.] Target asks this Court to Strike Plaintiff's Sixth Supplemental Expert Disclosure, arguing it was both untimely and improper sur-rebuttal evidence. Plaintiff contends this disclosure is a proper supplemental disclosure under Fed. R. Civ. P. 26(e)(2).

The disclosure of expert witnesses is governed by Fed. R. Civ. P. Rule 26(a)(2)(A). The Rule requires "a party [to] disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." The Rule permits affirmative expert disclosures and rebuttal expert disclosures; it does not permit parties to further rebut rebuttal expert disclosures. *Rothenberg v. Standard Ins. Co.*, No. 11-cv-01906-WYD-KMT, 2012 WL 2126846, at *2 (D. Colo. June 12, 2012) (citing Fed. R. Civ. P. 26(a)(2)(A)).

Federal Rule 26(a)(2)(E) states "the parties must supplement [expert] disclosures when required under Rule 26(e)." Rule 26(e)(1) provides that a party must supplement its response if "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Although Rule 26(e) imposes a duty to supplement on the parties, it cannot be used to circumvent deadlines in the Scheduling Order. Rather, supplementation is a means for "correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the disclosure." *Mullin v. Hyatt Residential Grp., Inc.*, No. 13-cv-2348-WJM-

3

NYW, 2015 WL 1502379, at *3 (D. Colo. Mar. 27, 2015) (quoting *Aid for Women v. Foulston*, 2005 WL 6964192, *3 (D. Kan. July 14, 2005)).

A side-by-side comparison of the reports indicates Mr. Gibb's supplemental report is intended not only to contradict Ms. Corwin's conclusions, but also to bolster his own opinions, which on its own is an improper use of rebuttal opinions. *Bautista v. MVT Servs.*, LLC, No. 16-cv-01086-NYW, 2017 WL 2082925, at *10 (D. Colo. Mar. 20, 2017) ("In actuality, [the expert] seeks to bolster the affirmative damages calculation offered by Plaintiff. This he cannot do through a 'rebuttal' report."); *see also Stephenson v. Wyeth LLC*, No. 04-2312-CM, 2011 WL 4900039, at *3 (D. Kan. Oct. 14, 2011) ("To allow plaintiff to present [the expert's] testimony in this manner subverts the expert disclosure process."). Mr. Gibb's report does not serve to correct any inaccurate information or fill in the gaps of his previous report. To be sure, the only information not available to Mr. Gibbs at the time of his original disclosure was Ms. Corwin's rebuttal expert report.  Despite Plaintiff's recharacterization, a sur-rebuttal by any other name is still impermissible. Therefore, Target's Motion is GRANTED and Plaintiff's Sixth Supplemental Expert Disclosure is STRICKEN.[3]

---

[3] Plaintiff also argues the sur-rebuttal is necessary and appropriate because Ms. Corwin's report was mischaracterized as a rebuttal opinion. As discussed in the following section, the Court concludes Ms. Corwin's report was properly disclosed as rebuttal.

## B. PLAINTIFF'S MOTION TO STRIKE
## TARGET'S REBUTTAL EXPERTS [#46]

Plaintiff filed his own motion to strike, seeking to exclude all Target's experts on the basis they are affirmative experts masquerading as rebuttals. [#46.]  Target argues each expert was retained to rebut the opinions of Plaintiff's experts. [#54.]

Trial courts maintain discretion to rule on the admissibility of rebuttal testimony. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1224 (10th Cir. 2000); *Grant v. Brandt*, 796 F.2d 351, 356 (10th Cir. 1986). Affirmative experts are those who are typically designated by the party who bears the burden of proof on an issue. *Anderson v. Seven Falls Co.*, No. 12–cv–01490–RM–CBS, 2013 WL 3771300, at *6 (D. Colo. July 18, 2013) (citing Advisory Comm. Notes to 1993 Amendments to Fed. R. Civ. P. 26). Rebuttal experts, on the other hand, are those "intended solely to contradict or rebut evidence on the same subject matter identified" by affirmative experts. Fed. R. Civ. P. 26(a)(2)(D)(ii); *E.E.O.C. v. JBS USA, LLC*, No. 10–cv–02103–PAB–KLM, 2013 WL 3302429, at * 6 (D. Colo. July 1, 2013). Rebuttal experts cannot "put forth their own theories; they must restrict their testimony to attacking the theories offered by the adversary's experts." *Spring Creek Expl. & Prod. Co., LLC, v. Hess Bakken Inv. II, LLC*, No. 14-cv-00134-PAB-KMT, 2016 WL 1597529, at *3 (D. Colo. April 21, 2016) (internal quotation marks omitted). Individuals designated only as rebuttal experts may present limited testimony, may not testify as part of a party's case-in-chief, and cannot testify "unless and until" the testimony they were designated to rebut is given at trial. *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008); *see also Johnson v. Grays Harbor Cmty. Hosp.*, No. C06–5502BHS, 2007 WL 4510313,

at *2 (W.D. Wash. Dec. 18, 2007) (finding experts designated as rebuttal witnesses would "be permitted only to offer rebuttal testimony at trial").

Plaintiff's overarching argument with respect to each of Target's experts appears to be that because the experts did not specifically reference Plaintiff's affirmative experts and their reports, Target's experts are not truly rebuttal. However, Fed. R. Civ. P. 26(a)(2)(D)(ii)

> make[s] clear that a rebuttal expert's testimony must relate to and rebut evidence or testimony on the same *subject matter* identified by another party under Rule 26(a)(2)(B) or (C). Such evidence *is not tied to any particular witness*; it is tied to whether the party with the affirmative burden has presented evidence and/or testimony from a duly disclosed expert on the same subject matter as that which will be rebutted by the disclosed rebuttal expert.

*Bleck v. City of Alamosa*, Colo., No. 10–cv–03177–REB–KMT, 2012 WL 695138, at *4 (D. Colo. March 5, 2012) (emphasis added) (citing *Baumann v. Am. Family Mut. Inc. Co.*, 278 F.R.D. 614, 2012 WL 27652, *2 (D. Colo. 2012) and *Morel v. Daimler–Chrysler Corp.*, 259 F.R.D. 17, 21 (D. Puerto Rico 2009)). "It is irrelevant through which expert witness that evidence is elicited; that it actually *be elicited* in the course of Plaintiff's case-in-chief is the determining factor in the context of the admissibility analysis." *Id*. (emphasis in original). With that in mind, the Court examines the disputed experts in turn.

### 1. Dr. Robert Kleinman

Dr. Kleinman is a physician, board certified in Psychiatry and Neurology, who conducted an independent medical examination of Plaintiff, reviewed Plaintiff's medical records, and assessed the diagnoses and treatment plans of Plaintiff's

providers. [#46-4.] According to Plaintiff, Dr. Kleinman does not use the words "rebut" or "rebuttal" in his written report, and during his deposition, Dr. Kleinman stated his report was not a rebuttal report. [#46 at pp.6-7.] Unsurprisingly, Plaintiff cites no caselaw for the proposition an expert must use magic words such as, "rebuttal" or "rebut," to be considered a rebuttal expert. Further, whether Dr. Kleinman is appropriately designated is for the Court to decide; thus, his statement that his report is not a rebuttal report is of no effect.

Plaintiff also argues Dr. Kleinman's report is primarily focused on Plaintiff's truthfulness, which he contends is not appropriate because Dr. Kleinman is then rebutting Plaintiff as opposed to an expert. [#46.] This two-sentence argument is woefully underdeveloped and certainly insufficient to warrant striking an expert report in its entirety. On that basis alone, the Court DENIES Plaintiff's request to strike Dr. Kleinman.

To be sure, Plaintiff designated three medical professionals, Nancy Bell, RN, MSW, LCSW; Robin S. Cohen, Ph.D.; and Marilyn Jacobs, Ph.D., to testify to the nature of Plaintiff's psychological injuries and the related therapy and treatment recommendations. Although the Court has not been provided with Plaintiff's medical records, from a review of Dr. Kleinman's summaries, it is clear Plaintiff's psychological diagnoses were largely based on his own self-reports to some or all of these medical professionals. In fact, one of Plaintiff's providers questioned the reliability of Plaintiff's subjective complaints as excessive. And Dr. Kleinman notes Plaintiff, thereafter, found therapists who did not challenge him on his extreme

psychological presentation. [#54.] Given the apparently subjective nature of psychological reporting and diagnoses, the Court concludes Dr. Kleinman's opinions regarding Plaintiff's credibility in this regard are proper rebuttal opinion based on the subject matter identified by Plaintiff with his experts concerning his psychological injuries and related therapy and treatment recommendations.

### 2. Dr. Kathy McCranie

Dr. McCranie is a physician, board certified in Physical Medicine and Rehabilitation, who also conducted an independent medical examination of Plaintiff. This examination included reviewing Plaintiff's medical records and making her own treatment recommendations. Plaintiff again relies on his argument that Dr. McCranie does not reference any of Plaintiff's experts in her report. The Court has already addressed this argument and continues to be unpersuaded by it. *Bleck*, 2012 WL 695138, at *4.

Target is correct Plaintiff bears the burden of establishing his injuries and related damages. In support of his claims, Plaintiff has disclosed Drs. Prager and Chopra, who diagnosed plaintiff with Complex Regional Pain Syndrome and Mast Cell Activation Syndrome and recommended a variety of therapies including nerve blocks, a variety of pain medications, and ketamine infusions. Dr. McCranie's report discusses Plaintiff's medical records and offers her own assessments as to whether the diagnoses are accurate and the treatment protocols necessary. [#46-5.] The Court finds those general opinions to be appropriate rebuttal testimony on the subjects identified by Drs. Prager and Chopra.

The Court has also reviewed Dr. McCranie's answers to a series of questions regarding Plaintiff's diagnoses, treatments, and the opinions of other providers. [*Id.* at pp.17-21.] In its Response, Target identifies Drs. Prager and Chopra as the experts Dr. McCranie is intended to rebut; therefore, the Court evaluates these specific questions in relation to the scope of these experts' opinions. Questions 1 and 3 ask Dr. McCranie whether Plaintiff's injury is consistent with her review of the surveillance video of the incident. [#46-5 at p.18.] There is no indication Drs. Prager and Chopra—or any of Plaintiff's providers—have examined (or opined on) the surveillance video; thus, the Court STRIKES these answers for going beyond the scope of rebuttal opinion. In addition, despite Plaintiff's concession regarding Question 7, the Court notes this question relates to Dr. McCranie's opinions on Dr. Van Dorsten's conclusions. Dr. Van Dorsten is one of Target's experts; therefore, it is not appropriate rebuttal opinion and is STRICKEN. Finally, Question 8 offers an assessment on Plaintiff's testimony and appears unrelated to any expert opinion. This answer is STRICKEN. The remaining questions go to the accuracy of Plaintiff's diagnoses and whether his treatments, including medications, are necessary. Based on the opinions and recommended treatments from Dr. Chopra and Dr. Prager, these are appropriate rebuttal opinions.

### 3. Drs. Bob Butler and David Fortenbaugh

Plaintiff retained Dr. Lila Laux to provide a "human factors analysis of [Plaintiff's] trip event when he shopped" at Target. [#46-8.] Dr. Laux specializes in determining "how people detect and gain information in their surroundings, process

hazard and risk information, make decisions about what they need to do and execute the actions." [*Id* at p.3.] In her report, she concluded Plaintiff's view of the pallet was obstructed by shelves and displays, and that Plaintiff did not detect the pallet before tripping over it. [*Id*. at p.4.] She also concluded the pallet had no attention attracting characteristics and customers would have no reason to expect it to be there; thus, creating a foreseeable hazard for Target shoppers. [*Id*. at pp.6-7.]

Target retained Drs. Butler and Fortenbaugh, from Engineering Systems Inc., to author "an accident reconstruction and visibility analysis of [the] incident that occurred at [Target]" ("ESI Report"). [#46-6.] Plaintiff argues this report is not proper rebuttal because he did not disclose an accident reconstruction or visibility expert. He further contends, because his "Human Factors" expert did not utilize the same testing methods, Target should have disclosed this report in accordance with the affirmative expert disclosure deadline. The Court is not persuaded.

"Rebuttal expert reports may introduce new methods of analysis, if presented for the purpose of contradicting or rebutting evidence on the same subject matter." *United States v. CEMEX, Inc.*, No. 09-cv-00019-MSK-MEH, 2011 WL 13068613, at *1 (D. Colo. Aug. 11, 2011) (citing *Deseret Mgmt. Corp. v. United States*, 97 Fed. Cl. 272, 274 (Fed.Cl.2011)). "Moreover, courts have also held that a rebuttal report may consider additional data not utilized in the expert report, again, if related to the same subject matter." *Id*.

Here, the Court has reviewed both expert reports and it is abundantly clear the ESI Report was intended solely to contradict or rebut evidence on the same

subject matter identified—in this case, the visibility, or lack thereof, of the pallet. To be sure, the ESI Report specifically discusses and critiques Dr. Laux's methods and conclusions regarding whether Plaintiff or any other customers would be expected to see the pallet and avoid it. That Drs. Butler and Fotenbaugh used accident reconstruction in reaching their conclusions, as opposed to a human factors analysis, does not affect the Court's conclusion. Plaintiff's request to strike this report is DENIED.

### 4. Ms. Aubrey Corwin

As previously discussed, Plaintiff designated Mr. Gibbs, an expert life care planner, to opine on the scope and cost of Plaintiff's future care needs and to comment on Plaintiff's future employability. [#46-11.] Mr. Gibbs based his conclusions on the opinions and treatments plans of Plaintiff's providers and an assessment of Plaintiff's transferable skills and functional limitations. [*Id.* at p.4.] Target then hired Ms. Corwin to "rebut the Preliminary Life Care Plan and Employability Assessment of Reg Gibbs." [#54-3.] Ms. Corwin's report was based on her review of Plaintiff's medical billing records, the reports of Plaintiff's experts, the rebuttal opinions of Drs. McCranie and Kleinman, and phone calls with the same. In addition, Ms. Corwin conducted a clinical interview with Plaintiff and administered a vocational test battery. [*Id.* at pp.1-3.]

In challenging Ms. Corwin's report, Plaintiff again relies on arguments this Court has already rejected—Ms. Corwin relied on testing not performed by Mr. Gibbs, considered additional data, and is only proper to the extent she references Mr. Gibbs'

opinions directly. *Bleck*, 2012 WL 695138, at *4; *CEMEX, Inc.*, 2011 WL 13068613, at *1. Apart from these purported deficiencies, Plaintiff makes no further arguments, and therefore, the request to strike Ms. Corwin's report is DENIED.

Further, this Court has reviewed Ms. Corwin's reports and concludes they are, in fact, appropriate rebuttal opinions. That Ms. Corwin administered vocational tests, while Mr. Gibbs did not, is part of her analysis regarding the reliability of Mr. Gibbs' forecast of Plaintiff's employment prospects. Further, Mr. Gibbs prepared a life care plan, with attendant costs, based on the opinions of Plaintiff's medical providers. It is Target's position these recommendations and costs are overinflated, and therefore, Ms. Corwin prepared a competing plan based on the views of Target's rebuttal medical experts, who offered more conservative opinions on Plaintiff's prognosis. In addition, Ms. Corwin prepared a report based on her own opinions of Dr. Chopra's recommendations. These reports are clearly rebuttal and the Court finds no basis to strike Ms. Corwin.

## C. TARGET'S MOTION TO STRIKE
## DR. CHOPRA'S AND RELATED EXPERTS' OPINIONS [#52]

On August 23, 2019, Plaintiff visited Dr. Pradeep Chopra for a medical examination related to his ongoing pain. [#52-2.] Dr. Chopra reviewed Plaintiff's medical history, including treatments and medications, and performed a full physical examination. He ultimately diagnosed Plaintiff with Complex Regional Pain Syndrome and Mast Cell Activation Syndrome and recommended a 12-part treatment plan. [*Id*.] Following the examination, Mr. Gibbs (Plaintiff's expert life planner) contacted Dr. Chopra to complete a "Patient Care Need Questionnaire," where Dr.

Chopra offered his opinions as to Plaintiff's future prognosis as well as what care Plaintiff would require in the long-term. [#52-6.]

Plaintiff designated Dr. Chopra under Fed. R. Civ. P. 26(a)(2)(C), that is, as a non-retained expert, and included only a summary of the opinions to which Dr. Chopra is expected to testify. Among these opinions, Plaintiff's disclosure states, "Dr. Chopra is expected to testify consistent with the details and opinions in his medical records *and the questionnaire provided to Mr. Gibbs*." [#52-1 (emphasis added).] Target moves to strike this portion of Dr. Chopra's opinion pursuant to Fed. R. Civ. P. 26(a)(2) and Fed. R. Civ. P. 37 because the questionnaire goes beyond the scope of his treatment, and therefore, he was wrongfully designated as a non-retained treating expert. Target also argues the opinions of Messrs. Gibbs and Kaiser, who relied on Dr. Chopra's inadmissible opinions, should be excluded. [#52.]

Pertinent here, Fed. R. Civ. P. 37(c) provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). In determining whether a violation is harmless, a trial court must consider (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 993 (10th Cir. 1999). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure

to disclose." *Id.* (citing *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998)).

If an expert witness is "retained or specially employed to provide expert testimony in the case," the disclosure of their identity must be accompanied by a written report prepared and signed by the expert. Fed. R. Civ. P. 26(a)(2)(B). If an expert witness is not retained or specially employed, no written report is required. Fed. R. Civ. P. 26(a)(2)(C). Instead, the disclosure of a non-retained expert must state the subject matter on which the witness is expected to present evidence, and a summary of the facts and opinions to which the witness is expected to testify. Fed. R. Civ. P. 26(a)(2)(C).

It is possible for a non-retained expert witness designated under Rule 26(a)(2)(C) to morph into a retained expert witness under Rule 26(a)(2)(B). Whether the transformation occurs depends on the substance or scope of the expert's proposed testimony. *Sellers v. Butler*, No. 02–3055–DJW, 2006 WL 2714274 at *3 (D. Kan. Sept. 22, 2006) (unreported decision) ("Rule 26(a)(2)(B) focuses not on the status of the witness, but rather on the substance and/or scope of [his] testimony."); *see also Trejo v. Franklin*, No. 04–cv–02523–REB–MJW, 2007 WL 2221433, at *1 (D. Colo. July 30, 2007) (unreported decision) (a treating physician is not immunized "from the requirement of providing a written report in conformity with Rule 26(a)(2)(B) in all circumstances"). For example, "a treating physician who has formulated opinions going beyond what was necessary to provide appropriate care for the injured party steps into the shoes of a retained expert for the purposes of" Rule 26(a)(2)(B). *Stone*

*v. Deagle*, No. 05-cv-1438-RPM-CBS, 2006 U.S. Dist. LEXIS 90430 at *11 (D. Colo. Dec. 14, 2006) (quoting *Thomas v. Consol. Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996)). "Similarly, when a treating physician's information or opinions were developed for trial, or where [his] expert testimony will concern matters not based on observations during the course of treatment, the treating physician will be required to prepare a written report" pursuant to Rule 26(a)(2)(B). *Stone*, 2006 U.S. Dist. LEXIS 90430, at *11 (citing *Washington v. Arapahoe Cty. Dep't of Soc. Servs.*, 197 F.R.D. 439, 441–42 (D. Colo. 2000)).

Courts in this District use a burden-shifting procedure to determine whether a designated expert witness is "retained or specially employed" and thus required to provide a report. *Scholl v. Pateder*, No. 09-cv-02959-PAB-KLM, 2011 WL 2473284, at *4 (D. Colo. June 22, 2011); *Morris v. Wells Fargo Bank N.A.*, No. 09-cv-02160-CMA-KMT, 2010 WL 2501078, at *2 (D. Colo. June 17, 2010). The initial burden is on the party moving to strike the expert witness to show that the designating party failed to produce an adequate written expert report pursuant to Rule 26(a)(2)(B). *Scholl*, 2011 WL 2473284, at *4. The burden then shifts to the designating party to produce some evidence showing that the designated expert is not retained or specially employed. *Id.*

It is undisputed Plaintiff's disclosure of Dr. Chopra did not fully comply with Rule 26(a)(2)(B). Thus, Target has met its initial burden. The burden shifts to Plaintiff to demonstrate Dr. Chopra is not retained. Plaintiff, relying on his appointment with Dr. Chopra on August 23, 2019, argues Dr. Chopra should be able

to testify regarding his personal knowledge of Plaintiff's treatment. [#57 at p.5.] This is a strawman argument. Target does not contend Dr. Chopra is prohibited from testifying about his exam, observations therein, and his treatment recommendations. Target only challenges the opinions presented in Dr. Chopra's questionnaire.

The Court has little trouble concluding this portion of Dr. Chopra's opinions constitutes those of a retained expert. First, the opinions expressed in the questionnaire are relevant to Plaintiff's long-term prognosis and future care needs, which goes beyond what "was necessary to provide appropriate care." *Stone*, 2006 U.S. Dist. LEXIS 90430, at *11. Second, Plaintiff paid Dr. Chopra to complete this questionnaire for use in Mr. Gibb's report—Mr. Gibbs having been retained specifically for this litigation. [#59-2.] This is the very definition of retained expert opinions. *Id.*; *see also Carbaugh v. Home Depot U.S.A., Inc.*, No. 13-CV-02848-REB-MEH, 2014 WL 3543714, at *3 (D. Colo. July 16, 2014) ("[W]hen a witness forms an opinion because there is a lawsuit . . . the witness is considered retained or employed.").

Plaintiff offers to resolve this dispute by agreeing to provide the additional materials required by Rule 26(a)(2)(B). But Plaintiff cannot offer as a bargain that which he was required to do in the first place. Because Plaintiff did not comply with the requirements for designating expert opinion testimony, the Court must now determine whether the failure was substantially justified or harmless.

The deadline for Fed. R. Evid. 702 motions passed long ago, and discovery has been closed for over a year. [#36, #39.] Neither party has filed a motion to amend the

Scheduling Order or to reopen discovery. Thus, as the matter is currently postured, if the Court were to allow Dr. Chopra to testify regarding the opinions expressed in the questionnaire, the prejudice is evident. And because there are no motions to reopen discovery or amend the Scheduling Order, Plaintiff's ability to cure is nonexistent. Permitting Dr. Chopra to testify on this questionnaire at trial likely would be disruptive considering that Rule 702 challenges would be made at that time. Finally, the Court perceives no bad faith or willfulness on the part of Target in this matter. While Plaintiff argues Target has long possessed Dr. Chopra's questionnaire, and therefore, was dilatory in filing its motions, Plaintiff neglects to address the fact this so-called disclosure was made with Mr. Gibb's expert report and *was not included* with Dr. Chopra's disclosure. Furthermore, Plaintiff *paid* Dr. Chopra to specifically provide opinions for use in this litigation, but only disclosed those opinions with Mr. Gibb's designation, as opposed to with Dr. Chopra's affirmative designation. [#59-2.]

To designate an affirmative expert and disclose only a portion of that expert's opinions, while then disclosing the remaining opinions through a different expert, is a questionable approach in the least. The Court observes that Dr. Chopra's invoice is dated October 6, 2019 [#59-2] and Plaintiff made his disclosure regarding Dr. Chopra's proposed testimony (including the questionnaire) eight days later on October 14, 2019. Thus, it appears Plaintiff knew before his original expert disclosures that the questionnaire constituted retained expert opinions. Arguing now that Plaintiff did not know a report would be required seems disingenuous given these facts. Plaintiff's violation is neither justified nor harmless. Therefore, the Court

STRIKES, and Plaintiff may not use at trial, Dr. Chopra's opinions expressed in the "Patient Care Need Questionnaire."

With respect to Target's arguments regarding the admissibility of Messrs. Gibbs and Kaiser, the Court notes Rule 26(a)(2) addresses only the sufficiency of the disclosure. Compliance with Rule 26(a)(2) does not resolve whether witnesses are qualified under Fed. R. Evid. 702 or whether their testimony is admissible at trial. Target's motion was brought pursuant to Rule 26(a)(2) and Rule 37(c)(1), and the Court has limited its analysis accordingly. Whether the proposed expert testimony is ultimately admissible at trial is a question for the trial judge, in this case Judge Blackburn. Therefore, the Court will DENY WITHOUT PREJUDICE Target's motion to exclude these experts from testifying.

\*       \*       \*

For the foregoing reasons, IT IS ORDERED:

1.      Target's Motion to Strike Plaintiff's Sixth Supplemental Disclosure [#43] is GRANTED.

2.      Plaintiff's Motion to Strike Defendant's Expert Rebuttal Opinions [#46] is GRANTED IN PART. Dr. McCranie's answer to Questions 1, 3, 7 and 8 in her report are STRICKEN. The Motion is DENIED in all other respects.

3.      Target's Motion to Strike Non-Retained Expert Testimony [#52] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE.


DATED:      April 12, 2021.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge